Arroyo v. Carolyn Colvin Welcome back. My name is Juan Manuel Frontera. I represent the appellant Mr. Rafael Arroyo. I will want to reserve two minutes for rebuttal. Good morning to all. I represent Mr. Rafael Arroyo who has been a federal employee at the Social Security Administration since February 1991 until the present. And the present appeals is with respect to the denial of the agency of granting him a promotion on 19 occasions. All of 19 occasions that he had requested to be considered for a promotion, he has been denied. And our contention is that the denial is closely related to Mr. Arroyo's continuous representation of employees throughout the EEO procedures in the agency and also as a union rep. Both issues that are protected activity under Title VII. Now, there are four specific instances or investigations that were followed in the agency through the EEO process. And those were the four specific investigations that the district court considered in its opinion in order of dismissing Mr. Rafael Arroyo's claim of retaliation. The first one has to do with two different vacancy openings. One in the Virgin Islands, San Croix, and 11 in Puerto Rico. I want to address first the 11 in Puerto Rico. The 11 in Puerto Rico, openings in Puerto Rico to which Mr. Arroyo applied with respect to the case number... Mr. Cordova was the officer that was in charge of the process. He was the supervising officer in charge of said process. With respect to that, in the opinion in order, the court makes this statement at page 17 of the addendum. For eight of the 11 positions, the commissioners reasoning for choosing another candidate instead of plaintiff is that nothing in his application stood out relative to the candidates they choose. These are 11 positions all throughout the island. And the persons that were reviewing Mr. Rafael Arroyo's request and the others make this stereotypical mentioning or reasoning as to the reason why they didn't choose Mr. Arroyo is that nothing stood out of his resume. That was the reason. Well, also, I was under the impression that these people that were actually picked were picked because they had more experience than he did. Well, with respect to this one, Your Honor, no. It is specifically stated with respect to the other cases. Other cases, we have four different instances. With respect to the others, that was some of the reasons, but we have other issues with respect to them. With respect to this issue, the protected activity is the ongoing representation? Yes, Your Honor. Okay, but the finding below was not that it was ongoing. It was just that there was a time period identified, which was lengthy, with no specificity about when the activity, the protected activity occurred within that time frame because there was no allegation that it was an ongoing representation. Your Honor. Is that correct? That's what was found? That was the district court's conclusion. So what's wrong with that? Yeah. Our contention with respect to that is that the record is clear with respect that Mr. Arroyo was union representative from until 1995, and from 1995 onward, he represented several employees throughout the EEO process. Now, with respect to the, the district court made the erroneous conclusion because it took, it took as the moment of like the protected activity, the filing of an EEO process. And it says it's too much apart from the. Does the record show that in fact there was an ongoing representation? Yes, Your Honor. Okay. From the documents in the appendix, there is a sworn statement by my client at page, I'm going to tell you, at page 143 to 145 of the appendix. And there is also from page 139 to 142 a list of cases that he represented that we could get. Those cases are from 2009 onwards. Now, prior to 2009, his statement before the court is that he was continuously representing employees throughout the EEO process. And as an example only, one of his EEO processes expanded for a period of eight years throughout the agency. He was representing throughout. But there's nothing in the record showing what the time period was for the actual processes in which he did the representation. No, the allegation that he made in the statement is he was representing plaintiff employees throughout the EEO process all along those years. Yeah, but so is your contention that that's clearly erroneous? Is that the argument? The finding is clearly erroneous? Well, it has, clearly erroneous is not the standard. Why? What is the standard for how we evaluate? There's a finding that he didn't do, there's a factual finding. There's a factual controversy because the court states, no, that's not sufficient to establish the fact. It found that there is no evidence in the record to show that he was engaged in continuous representation. You're saying now that the record shows he was engaged in continuous representation, right? Yes. If he wasn't engaged in continuous representation, you have no quarrel with the district court, right? Yes, because the court concluded that the court could not establish that it was ongoing. If it was not ongoing, you agree with the district court? Sure. Okay, so then that key thing is whether that factual finding is correct or not. Don't we review that for clear error? No. I think you're determining if the findings of the court are sufficient to dismiss a case as summary judgment, and that's de novo. Within the de novo, there cannot be, well, as to this, it's clear erroneous. The issue is we are presenting here a de novo review. And page 145, the sworn statement of my client, establishes that since 1995 until 2009, I represented several employees in EEO processes within the agency. And since around 1993 to 1995, I represented union employees in EEO grievances on the labor-related matters against the agency and its officials. But it doesn't say how long that 1995 representation lasted. But until 2009, from 1995 until 2009. But what's wrong with what the district court said, which is that we don't know what happens between 1995 and 2009. We're trying to find something that's close enough to the time to count as support for it being proximate in time, and therefore... He's not saying that he represented one employee. He's not saying either way. Sure, but from the record, it's from 1995 until 2009, he's represented several employees in the EEO process. And within the time frame of each specific case, it is evidence in the record that at the time of each specific case, he was representing employees directly related with the people that took part in the consideration of taking the decision. Does the record show anything about whether, in fact, he was representing somebody within a month or two of the firing day? Yes, as with respect to the case 09-500, that is, at page 23 of the addendum, the court discusses it. It is clear at that time that plaintiff was representing a claimant that accuses the decision-maker of taking the decision. Is there any evidence of discrimination in that EEO process? This is as to the first case? No. As to the first case? As to the first case. Is there anything in the record as to the first case that shows he was engaged in protected activity within one month or two months of the time of the dismissal? The issue, yes, because once you file an EEO process, the EEO process is not resolved in one or two months. The EEO process takes longer than that. The EEO and Mr. Cordova was one of the persons against which Mr. Arroyo represented claimants throughout the process. Did you offer any evidence of pretext? Well, our evidence of pretext... Can we start with the SRO? Yes, yes, Your Honor. Okay. We believe that, yes. You're learning. Yes. I've been here a while. I have to learn. Your Honor, we believe yes, because... Tell me what it was. Okay. You have to take the weakness of the legitimate reason, because although the burden of the defendant is to give an explanation, you have to weigh the weakness of it. In this case, on eight of the positions, on eight of the 11 positions, the reasoning was that nothing on his application stood out. That's a pretty weak argument. Tell me which one you're talking about, because... I'm talking about the first one. Who was the... where was the position? These positions were 11 positions throughout the island, the Puerto Rico island, the main island. And who... At page 17 of the addendum, the court, the opinion and order of the court, I'm reading from it, and the court states, for eight of the 11 positions, the commission reasoning for choosing another candidate instead of plaintiff is that nothing in his application stood out. That's a weak position we pose to the court. That, taken into consideration with the fact that Mr. Arroyo had been represented claimant throughout the process against Mr. Cordova, who was one of the persons in charge of taking this decision. Here's the problem I'm having. Yes. I charted out these positions, and I probably should have done it by number. It's not that his application didn't stand out. It was, for example, the people that were hired had experience working with the people that were actually hired. Staffing limitations, more experience in the particular job, et cetera, et cetera. I can't find one where the only explanation given was that his application didn't stand out. I'm reading from the opinion and order of the court. And I understand that. With respect to the issues, to the other cases, those are the reasonings, okay, that the people had more experience. Well, more experience that the people that was taking the decision knew about. If you look closely, the reasoning was, well, I supervised this person. I know from where he comes from. I know his performance. I'm going to choose him, and I'm going to choose him because I have worked with him. How many cases are you? You've got five cases? Four cases. Okay. In three of the cases, the last three cases, there was a legitimate nondiscriminatory reason articulated. Yes. Did you give any evidence of pretext in those three cases? Yes. The weakness of the... No, no, no, no, no. That's an argument that they didn't give a reason. No. What I oppose the court is passing that the government has articulated a legitimate reason. The court doesn't stop there. The court, when taken into consideration, Mr. Arroyo's continuous representation and... So your only evidence of pretext is that they gave a weak reason. Yes. The weak reason plus the proximity, the close proximity... No, that's the basis for thinking it to begin with. I understand. So you don't have the kind of pretext we usually see, which is fine if you don't, but you just, you don't. No, but the case law permits the court to infer pretext. No, I understand. I didn't ask. I got it. I got it. Okay, first case. Those are the last three. As to the first case, you contend they did not even give a legitimate nondiscriminatory reason, correct? Part of that, yes. Yes, okay. And the issue there for you is the district court said there was no finding to begin with of an inference, right? Yes. Okay. Thank you. Good morning, Your Honor.  Good morning, sir. Good morning. The problem with Applin's position is that he was silent. He was silent after October 1995, which is really the only tangible date, if you will, that the district court had that he ceased to be a union representative. The rest, he's silent as to how did he represent the employees. And that's relevant only for the first case, right? That's relevant to the, well, yes, that's relevant to the... In both cases, there's a different kind of protected activity issue. Yes? Well, the thing is that the only protected activity that stands out and it was the basis of the district court decision was October 1995. As to the rest, there were two supervisory positions that Mr. Arroyo did not qualify. He was qualified. He was in all the well-qualified lists for all the positions. Hadn't he sought EEO counseling himself prior to some of the other decisions in the other cases? Well, we don't know because the Applin was silent as to that. He just self-serving, he just made a blanket declaration that he was involved in providing... That's as to his representation of others. Of others. That's correct. But after he's denied a position, doesn't he seek EEO counseling? Am I wrong on that? After he... What's that again, sir? I thought in some of these cases he was alleging the protected activity was that he sought EEO counseling after he was denied positions. Is that wrong? Well, he sought, yes, he sought the EEO counseling for his case on the other cases. And some of those come before decisions adverse to him. Yes. So that could be the protected activity, seeking the EEO counseling. That's what I thought he was arguing. Well, theoretically, yes, Your Honor. Okay. So the point about the representation just matters for the first case. Yes, that's correct, Your Honor. Okay. That's correct. But even assuming, even stretching the imagination here, stretching that the protected activity went beyond October 1995, there's a lot of, there's a myriad of reasons on why the commissioner chose the person he chose. And it was because of experience, seniority, personal observation, and references. And there was nothing wrong with that. On the first case. On the first case, none of that's in the record as to why they denied it. The first case was a vacancy in St. Croix that was canceled. And it was canceled because the applicant changed his mind or her mind to go to Florida. So she stayed in the position. So the agency canceled that vacancy. It had nothing to do with him. In the case where they say he didn't stand out. Which case is that? There's too many cases here. In the case where they say he didn't stand out. Okay. The phrase, quote, unquote, nothing stands out. Yes. It refers to that compared to the qualification of the other applicants, really. That's it. That's all we have. We don't know what they meant by that, right? We don't know what's right. Okay. So how can that count as a legitimate non-discriminatory reason? That was not the legitimate business reason. The legitimate business reason was they chose the other positions because of their experience, 19 years minimum, versus eight or nine that Applin had. The other employees were much better qualified. They had seniority. Their performance was better. So at some point in time there was a comment in the sense that compared to all the other candidates, really the bottom line was that Mr. Arroyos did not stand out. And we submit that there's nothing wrong with that when it is compared to the qualifications of the other persons who filled the positions for customer representative and two supervisory positions. Mr. Rafael Arroyo did not have any of those qualifications. He did not supervise anybody at the Social Security. On the other hand, the two candidates were chosen because they had previous supervisory positions. So what comes clear in this case, Your Honor, is that even assuming that we can stretch out to favor the Applin the temporal proximity and tie it up with a protected activity, there's ample evidence in the record that the best candidates were chosen to fill all those positions. Mindful that at that time Mr. Arroyo only had eight to nine years of experience at the agency. And he was competing with others that have at least 19 years. And the performance was outstanding on the other side. And Mr. Arroyo was qualified. There's no doubt as to that. He was in the well-qualified list. When there's paperwork in connection with the rendering of these hiring decisions, correct? That's correct, Your Honor. And is it a form? Yes, it can be a form. It's some sort of written. It doesn't have to be one particular type of form. Here's what I'm getting at. There were instances in which the decision-maker on the hire said that Mr. Arroyo's resume didn't stand out. But my understanding is that in many, if not all, of those where they said that, they also gave a concrete reason. That's correct. The person had more experience. The hiring person was familiar with one of the applicants and had worked with them. Yes, sir. Is that correct? That's correct, Your Honor. Okay. And mindful that there were four selecting officials here. Mr. Cordova just acted as the concurring official. And in the bureaucracy of the procedure, the concurring official is really he signs on on the recommendation. The hiring officials were Hernandez? It was Mr. Negron. Let me take a look here, if you will. Mr. Negron, Mrs. Hernandez, Mr. Siaca, and Maria Montalvo. Montalvo? Montalvo, yes. And Hugo Cordova was the concurring official. And that's practically signing the papers, endorsing what the selecting official recommended to him. But the one who really made the decision were the selecting officials. And it's very clear on the record that, again, it was based on seniority, performance, personal observation, and references. And there's nothing wrong with that. That's the problem with the applicant's position is that he never brought forth any indication of any type of unlawful discriminatory reasons for the commissioners, for the selecting officials to have chosen the positions. And he never, never, there's not a centillion of evidence in the record to suggest that those factors had to do anything other than to rightfully pick the persons who would fill that position. And we have the Mesny case which says that unless there's some discriminatory reason for the hiring of any employee, the courts should not sit as a super-industrial personal entity to substitute the criteria that the selecting officials had. They were there. They observed the person who were interviewing. They made the decision, underscore, absent discriminatory reasons. If that's an argument for not second-guessing, that's exactly what we do every day. Okay? Okay. Thank you. Thank you, sir. Thank you, counsel. I just wanted to address some of the issues raised and raised by the court. The conclusion of the district court was that eight only gave, and that's the first case. It is the case 990223. Who was the hiring official? The hiring officials were the one mentioned by Mr. Saviano. You're about to refer to a specific one. Can you tell me who the hiring official was? That was the selection of Maya West. I think that the selecting official of that was, I'm going to tell you right now, I don't have the specific name right now, but it was the Maya West one, and the court says. Was it more than one position? It was Ms. Montalvo. It was three positions in Maya West. Okay, this was Montalvo? Yeah. My understanding is on that one, the explanation was due to staffing limitations, was unable to select any applicant not employed in the Maya West district. Decision made entirely on seniority. Yes. There is absolutely no reason what relevancy has staffing issues with selecting only Maya West officials. This is an opening all throughout the island. She has no authority to establish, I'm only going to consider this. That's a pretext argument that you didn't make. I have made that pretext argument in the brief. Your Honor, in the brief I made the specific argument that this explanation is not related. There's nothing in the record that shows whether it is or isn't relevant, the staffing limitation, is there? What? There's nothing in the record that supports what you're now saying as to whether the reason she gave is or is not a good reason. Is there? Yes, we argue in our brief that it's not, Your Honor. And our contention is that these are only weak explanations that if you take into consideration the weak explanation with Mr. Arroyo's continuous representation and the fact that the people in the other cases making the determinations are directly related to EO procedures he was involved, there's a reasonable inference that a jury can make that discrimination was part of the process. Thank you, counsel.